Decided at PENDLETON, July 20, 1895.

## BALFOUR v. BAKER CITY GAS COMPANY.
[41 Pac. 164.]

LIABILITY OF STOCK SUBSCRIBER IN A PROPOSED CORPORATION.*— An uncondi-
tional subscription to the stock of a proposed corporation becomes abso-
lute and irrevocable, as to the creditors of the organization, upon the
formation of the company within a reasonable time thereafter, unless
such subscription is before that revoked.   Once the subscriber has prom-
ised to pay for the capital stock, he is bound to so do, and an agreement
by the promoters or agents of the corporation to relieve him from such
liability has no force, in the absence of a sufficient revocation.

APPEAL from Baker: MORTON D. CLIFFORD, Judge.

This is a suit in equity by the firm of Balfour, Guthrie
and Company, who are judgment creditors of the Baker
City Gas and Electric Light Company, to reach certain
unpaid subscriptions to the capital stock of that corpora-
tion, and have them applied to the satisfaction of their
judgment.    There was a decree for the plaintiff, and
Isaac Bloch appealed.                          AFFIRMED.

For appellants there was a brief by *Messrs. Olmstead
and Courtney,* and an oral argument by *Mr. M. L. Olmstead.*

A preliminary subscription to the capital stock of a
corporation may be revoked at any time before the full
and complete establishment of the corporation: *Hudson
Real Estate Company* v. *Tower,* 156 Mass. 82 (32 Am. St. Rep.
434, 9 Am. R. R. and Corp. Cas. 246).    There was in this
case no subscription to the capital stock but the mere
offer to become a subscriber.    There is a marked differ-
ence between those who subscribe for the capital stock
before and after incorporation, also as to preliminary

---

*A very useful note collecting many authorities on the liability of persons who
either do take or agree to take stock in corporations is printed with the case of
*Topeka Manufacturing Company* v. *Hale,* 17 Pac. 601.

agreements to subscribe for shares in corporations. The rights and liabilities resulting in the various cases are very different. If the parties simply agree to subscribe for shares in the future, there is no unconditional agreement to become shareholder as soon as the corporation is complete; but it is contemplated that if the parties wish to perform the additional acts of executing the statutory subscription upon the stockbook thereby completing their wish to become shareholders, in such a case there is no authority by which a corporation can accept, and the parties do not become stockholders unless they carry out their agreement by actually subscribing for the shares, or by accepting the same: Morawetz on Private Corporations (2d ed.), 49; notes to *Parker* v. *Thomas,* 81 Am. Dec. 392; *Thrasher* v. *Pike County Railroad Company,* 25 Ill. 393; *Quick* v. *Lemon,* 105 Ill. 578, 585; *Mt. Sterling Coal Company* v. *Lytle,* 14 Bush, 429; *Strawsburg Railroad Company* v. *Echternacht,* 21 Penn. St. 220 (60 Am. Dec. 49).

An offer to become a stockholder may be revoked any time before acceptance: 1 Morawetz on Private Corporations, § 50; *Stuart* v. *Valley Railroad Company,* 32 Gratt. 147; *Goff* v. *Winchester College,* 6 Bush, 443. Under sections 3220, 3221, 3222, Hill's Code, which provides that the articles of incorporation shall be filed and the charter obtained before any stock whatever is subscribed. There is no person authorized to receive subscriptions to the stock of a corporation until the articles of incorporation are filed. The subscription is only the agreement to take the stock in the corporation thereafter to be organized, with the power and authority conferred by the articles of incorporation. This agreement or offer will be regarded as nothing more than an offer to become a shareholder or to take shares, and such offer can be accepted only by the proper agents of the company after its organization: *Fairview Railroad Company* v. *Spillman,* 23 Or. 589, 590. To

render a person liable as a stockholder of a corporation he must sign his name to the subscription of stock, or authorize an agent to do it for him, and this authority must be expressed and not implied. Papers and agreements made by persons contemplating becoming stockholders in a corporation, made before organization, do not give authority to the secretary of the corporation to place in the list of stockholders on the stockbook the names of such person: *Coyote Gold Mining Company* v. *Ruble,* 8 Or. 284. In order to charge one as a subscriber to the capital stock of a corporation he must either have subscribed, or must have admitted his liability in some manner: *Harrison National Bank* v. *Votaw,* 32 Pac. 1111. If the corporation adopts the contract made by the promotors, such adoption cannot relate back, for before organization there was no power to contract: *McArthur* v. *Times Printing Company,* 48 Minn. 319 (31 Am. St. Rep. 653).

For respondent there was a brief and an oral argument by *Mr. William F. Butcher.*

Defendant is liable for the amount of stock subscribed and the act of subscription constitutes the subscriber a shareholder, immediately and subjects him to a liability to contribute to the amount of his subscription and directly creates his engagement: Constitution of Oregon, Art. XI, § 3; *Astoria Railroad Company* v. *Hill,* 20 Or. 181; Morawetz on Private Corporations (2d ed.), Vol. 1, § 59.

A subscriber cannot obtain cancellation of his subscription without unanimous consent of other subscribers: Cook on Stocks and Stockholders (2d ed.), § 169, and cases cited; *Lake Ontario Railroad Company* v. *Mason,* 16 N. Y. 463; *Bullock* v. *Falmouth and Turnpike Company,* 85 Ky. 184 (3 S. W. 131); *Minneapolis Threshing Machine Company* v. *Davis,* 40 Minn. 110 (3 L. R. A. 796, 12 Am. St. Rep. 701). Nor

can he cancel his subscription by having others subscribe for the stock he has taken: *Cartwright* v. *Dickinson,* 12 S. W. 1030; and if there is no record of cancellation, and the stockholder continues to act as such, he is bound: *Topeka Manufacturing Company* v. *Hale,* 39 Kan. 23, (17 Pac. 601,) with note.

Whenever an intent to become a subscriber is manifested, the courts are inclined not to be particular about formalities, and to uphold the contract of subscription: Cook on Stocks and Stockholders (2d ed.), §§ 52, 53.

A subscription for shares in a corporation thereafter to be formed under a general law may be accepted by the corporation after organization, and any act showing such intention to accept is sufficient: *McCormick* v. *Great Bend Gas and Fuel Company,* 29 Pac. 1147; *New Albany and Salem Railroad Company* v. *McCormick,* 10 Ind. 499; Morawetz on Private Corporations (2d ed.), §§ 47–51. The rule is also well settled that parties signing before incorporation become bound as soon as incorporation is completed to take and pay for shares so subscribed: *Minneapolis Threshing Machine Company* v. *Davis,* 40 Minn. 110 (3 L. R. A. 796, 12 Am. St. Rep. 701, 41 N. W. 1027); *Bullock* v. *Falmouth Turnpike Company,* 85 Ky. 184 (3 S. W. 129); *Marshall Foundry Company* v. *Killian,* 99 N. C. 501 (6 Am. St. Rep. 539, 6 S. E. 682); *Bell's Appeal,* 115 Pa. St. 88 (2 Am. St. Rep. 532, 8 Atl. 177); *Marysville Electric Light Company* v. *Johnson,* 93 Cal. 538 (29 Pac. 127); *Hotel Company* v. *Friedrich,* 26 Minn. 112; *International Fair Association* v. *Walker,* 83 Mich. 386 (47 N. W. 338); *Gibbons* v. *Grinsell,* 79 Wis. 365 (48 N. W. 255) *Farnsworth* v. *Robbins,* 36 Minn. 369 (31 N. W. 349); *Vanderwerker* v. *Glenn,* 85 Va. 9 (6 S. E. 806); *In re Reciprocity Bank,* 22 N. Y. 17.

Where several promise to contribute to a common object desired by all, the promise of each is a good consideration for the promise of others, and can be enforced

by suit when the corporation or person to whom the subscription runs has incurred obligations on the faith of such subscription and has complied with the conditions upon which they were made: *Homan* v. *Steele,* 18 Neb. 652 (26 N. W. 472); *Gibbons* v. *Grinsel,* 79 Wis. 365 (48 N. W. 255); *Lathrop* v. *Knapp,* 27 Wis. 214; *LaFayette County Monument Corporation* v. *Magoon,* 73 Wis. 627.

When one makes a conditional subscription to capital stock of corporation and the condition is not strictly complied with, if he desires to take advantage of the condition he should promptly require his subscription to be canceled, else he will be deemed to have waived it: *Lee* v. *Imbree,* 13 Or. 510. Any private agreement between agent of corporation and subscriber, that he shall not be called upon to pay, or that in certain event he shall be released, or which otherwise limits his liability is not only void as to creditors, but also as to company itself if unauthorized: Boone on Corporations, § 110, and cases cited; Morawetz on Private Corporations (Vol. II), § 842.

Whether this subscription list was signed before or after the incorporation matters not, for while the statute says that certain parties may open stockbooks and do so after incorporation, it does not say that it may not be done in some other way, and since it is not disputed that appellant signed the written consent for meeting of subscribers, that act ratified and recognized every other act that was done before as having been done in regular order. By signing the written consent he participated in the meeting held for organization and election of officers just as much as if he had been personally present, since without this consent or his presence, said meeting could not have been held at all and with it and upon the strength of it the others acted and this company was started,— put on foot as it were. Without this act the company could not have begun business and could not

have contracted debts with any one,—could not have owed the very money to plaintiff to recover which this proceeding was instituted and he cannot now be heard to deny his subscription as against creditors: *Vanderwerken* v. *Glenn,* 6 S. E. 806.    No matter what arrangements may have been had between him and the company or any of the promotors thereof not appearing in the record.

Opinion by MR. CHIEF JUSTICE BEAN.

The only question here is whether the defendant I. Bloch is liable as a stockholder to the creditors of the corporation.  The facts are that prior to August, eighteen hundred and eighty-eight, certain citizens of Baker City, desiring to organize a corporation to furnish the city and its inhabitants with light, circulated a subscription for stock in a corporation thereafter to be formed for that purpose, and Bloch signed the same for twenty shares of the par value of fifty dollars each.   After one half of the capital stock of the proposed corporation had been thus subscribed, and on the sixteenth day of August, eighteen hundred and eighty-eight, articles of incorporation were regularly executed and filed.   No formal stockbooks were ever opened or stock subscribed other than as above mentioned, but on the twenty-fifth of August, eighteen hundred and eighty-eight, a portion of the signers to the preliminary stock subscription held a meeting by the written consent of the others, and elected a board of directors for the corporation, and completed its organization.   Bloch was not present at this meeting, but was one of the consenting parties.   Subsequently his name and those of all the other subscribers to the preliminary agreement were entered as stockholders upon the stock journal and ledger of the company by its officers, and on the twenty-first of November, eighteen hundred and

27 OR.—39.

eighty-eight, a certificate of stock in favor of Bloch was made out and signed by the president and secretary of the corporation. If these were all the facts in the case, defendant's liability would be clear, for it may now be accepted as established by the overwhelming weight of authority that an unconditional subscription to the stock of a proposed corporation takes effect and becomes irrevocable upon the birth of the corporation, unless sooner revoked. "Each subscription, when made," says Judge DAVIS, "becomes a conditional contract with every other person who may subscribe; that the amount subscribed shall, upon the formation of the company, be paid in accordance with the terms of the subscription; and when the requisite stock is subscribed, and the company is duly organized, it becomes the offer or basis of credit to the public, or to all who may deal with it, and every subscriber participating in the organization thereby makes his subscription absolute, and is bound to pay it according to the terms of the charter and by-laws of the company, and he can discharge his liability in no other way": *Marshall Foundry Company* v. *Killian*, 99 N. C. 501, (6 S. E. 682, 6 Am. St. Rep. 539). And in *Minneapolis Threshing Machine Company* v. *Davis*, 40 Minn. 110, (41 N. W. 1027, 3 L. R. A. 796, 12 Am. St. Rep. 701,) it is held that a subscription by a number of persons to the stock of a corporation thereafter to be formed by them has in law a two-fold character. It is, *first*, a contract between the subscribers themselves to become stockholders, without further act on their part, immediately on the formation of the corporation and is binding from the date of the subscription; and, *second*, it is in the nature of a continuing offer to the proposed corporation, which, upon acceptance by it after its formation, becomes, as to each subscriber, a contract between him and the corporation. And the authorities generally seem to be to the same

effect: 1 Cook on Stocks and Stockholders (3d ed.), §§ 72, 75; 1 Thompson on Corporations, § 1170. And this is the better rule, although the statute may provide for the opening of stockbooks by designated persons after articles are filed: 1 Cook on Stocks and Stockholders, § 57; 1 Thompson on Corporations, § 1166; *Peninsular Railway Company* v. *Duncan,* 28 Mich. 130; *Buffalo Railroad Company* v. *Gifford,* 87 N. Y. 294. From an extended examination of the authorities we take the law to be that when the proposed corporation is formed as contemplated in the preliminary subscription, and within a reasonable time thereafter, the subscription, unless revoked in the manner authorized by law, becomes irrevocable; the subscriber becomes a shareholder, and liable as such without any further act on his part; *Marysville Electric Light Company* v. *Johnson,* 93 Cal. 538 (29 Pac. 126); *Twin Creek Road Company* v. *Lancaster,* 79 Ky. 552; *Hudson Real Estate Company* v. *Tower,* 156 Mass. 82 (32 Am. St. Rep. 434, 30 N. E. 465); *Minneapolis Threshing Machine Company* v. *Davis,* 40 Minn. 110 (41 N. W. 1026, 3 L. R. A. 796, 12 Am. St. Rep. 701).

But it is said for the defendant that the preliminary subscription and his consent to a meeting of the stockholders for the election of directors were each signed by him some months before the articles of incorporation were executed or filed, and that before the formation of the corporation he notified Messrs. Parker and Hyde, the promoters thereof, that he could and would not take any stock in the proposed corporation. It seems to be agreed that Bloch did seek to be relieved from his subscription a short time after it was made, and that the two principal promoters of the enterprise, who afterwards became president and secretary of the corporation, consented thereto, and agreed to divide his stock among the other shareholders, and for that reason no call was ever made upon him by the company for the payment of his

stock. But the main question is whether his attempted withdrawal was before or after the organization of the corporation. If it was after such organization, it was of no force or effect whatever as to the creditors of the company, because his contract or liability as a stockholder became binding and irrevocable as to them when the company was formed. Nor could the agents of the corporation, by their consent to his withdrawal, relieve him from such liability: 1 Morawetz on Corporations, § 109.

In *Hawley* v. *Upton,* 102 U. S. 316, the rule is thus stated by Mr. Chief Justice WAITE: ''It cannot be doubted that one who has become bound as a subscriber to the capital stock of a corporation must pay his subscription if required to meet the obligations of the corporation. A certificate in his favor of stock is not necessary to make him a subscriber. All that need be done, so far as creditors are concerned, is that the subscriber shall have bound himself to become the contributor to the fund which the capital stock of a corporation represents. If such an obligation exists, the courts can enforce the contribution when required. After having bound himself to contribute, he cannot be discharged from the obligation he has assumed until the contribution has actually been made, or the obligation in some lawful way extinguished.''

The original stock subscription was not produced on the trial, having been lost or mislaid, and hence we do not have its date, if it was dated, to aid us in determining the time at which it was signed, but must determine this question, as well as the time of Bloch's attempted withdrawal, from the indefinite and shadowy recollection of witnesses, and the admitted facts and probabilities of the case. The defendant testifies quite positively that he signed both it and the consent to the stockholders' meeting in May or June before the organization of the corporation, but the weight of testimony is against him on

this point, and it seems to us that his recollection is at fault. The great weight of the oral testimony is that the preliminary subscription was signed a few days before the articles were filed, and in contemplation of the immediate organization of the company, and we have no doubt the consent to the stockholders' meeting was signed by Bloch after the articles were filed and copied in the records of the company. The record of the organization of the company is of itself such persuasive evidence on this point as to prevail over the mere indistinct recollection of witnesses testifying from memory to transactions occurring five or six years before. The first entry in this record is a copy of the articles of incorporation, immediately following which, and commencing at the top of the succeeding page, is the consent of the stockholders' meeting, signed by Bloch and others, and which recites that the parties signing are subscribers to the capital stock of the corporation. Following this is a list of stockholders, and the minutes of the meeting of August twenty-fifth. The original consent to the stockholders' meeting being in the record-book immediately following the copy of the articles of incorporation and preceding the minutes of the meeting, is almost conclusive proof that it was written in the book and signed by the parties after the articles of incorporation were not only executed and filed but copied in the record. And, besides, this written consent is for a stockholders' meeting to be held on the twenty-fifth of August, eighteen hundred and eighty-eight, and at a particular place. If the preliminary subscription for stock and consent to the stockholders' meeting had been signed at the time claimed by the defendant, it is highly improbable that one would have been on a loose sheet of paper and the other in a record-book; and it is still more improbable that the consent to the stockholders' meeting of a corporation there-

after to be formed, signed in May or June, would have fixed the date of such meeting on the twenty-fifth of August following.  For this reason, as well as the place at which it appears in the records of the company, we think it must be taken as one of the established facts in this case that defendant gave his written consent as a stockholder to the first meeting of the shareholders of the company for the purpose of organization, after the articles of incorporation were filed, and that therefore he was acting as a shareholder and to that extent participated in the organization of the company.  And, besides, without his subscription the company could not have been legally organized, for want of a sufficient subscription to its capital stock.  The undisputed facts in the case, as well as the great preponderance of evidence and the general probabilities, clearly indicate to our minds that defendant's attempted withdrawal must have been after the organization of the corporation, otherwise the company could not have been organized, his signature would not appear to the consent for a stockholders' meeting, nor is it likely that his name would have been entered on the books of the company as a stockholder by one of the very parties who, he claims, consented to his release, nor would a certificate of stock have been made out in his name three months after the organization signed by all the parties whom he claims consented to his withdrawal.  Assuming, therefore,—but without deciding,—that a subscriber to the stock of a proposed corporation may withdraw his subscription before the formation of the corporation, without the consent of all the other subscribers, we are clear that from this record the facts do not justify the application of the rule, and the decree must be affirmed.

AFFIRMED.