Argued 14 January; decided 25 March; rehearing denied 6 May, 1901.

## HAWKINS v. CITIZENS' INVESTMENT CO.

[64 Pac. 320.]

REAL PARTY IN INTEREST — JUDGMENT AS EVIDENCE.

1. In a suit or action on a judgment against a corporation the judgment itself is conclusive evidence that the party who obtained it was the real party interested.

LIABILITY OF STOCKHOLDERS — CONTRACT OF SUBSCRIPTION.*

2. The liability of a stock subscriber in a corporation is determined by the written contract, and it cannot afterwards be changed, as against intermediate creditors, by any action of the corporation or its officers; thus, where the contract of subscription recited that the members agreed to pay par value for their stock, and the certificates were to the same effect, but the subscribers averred that the oral agreement was that such stock was to be paid for in dividends; and certain dividends had been declared, and stock exceeding the amount of dividends was issued, and subsequently, on a resolution to call in and cancel the certificates representing such stock, the secretary credited the members with the amount remaining unpaid thereon; as against plaintiff, to whom the corporation had meanwhile become indebted, the members were liable for the difference between the amount of their dividends and the par value of their stock: *Balfour* v. *Baker City Gas Co.*, 27 Or. 300, cited.

CONDITIONAL SUBSCRIPTION† — PAYMENT BY MISTAKE.

3. Where certain persons signed a conditional agreement to subscribe for stock in a corporation, and, the agreement coming into the secretary's hands, he entered the names, and issued stock to one of such members, who received it and made partial payments thereon under the mistaken belief that the conditions had been complied with, he was not estopped by such payments from asserting the invalidity of the subscription against a creditor of the corporation.

INTEREST ON UNPAID STOCK SUBSCRIPTIONS.

4. Under Hill's Ann. Laws, § 3587, declaring that all moneys bear interest "after they become due," subscriptions to corporate stock under

---

*NOTE.—In this connection, see the monograph, Liability of Stockholders to Creditors of Corporations for Corporate Debts, 3 Am. St. Rep. 806, 821, 823; also, note, Stockholder Cannot be Released From His Subscription Contract, 7 L. R. A. 706.—REPORTER.

†NOTE.—With the case of *Fear* v. *Barrett*, 33 L. R. A. 721, is a note, Rescission for Fraud or Misrepresentation in Procuring Subscription to Stock.—REPORTER.

a contract that payments thereon shall be in monthly installments bear interest from the time they become due, and the interest is as much an asset of the corporation as the unpaid subscriptions.

LIABILITY OF SUBSCRIBER ON TRANSFERRED STOCK.

5.   Where a shareholder assigned and delivered unpaid shares to the president of the corporation as a vendee and received the price therefor, and not for the purpose of having the shares transferred on the books, and they were not so transferred until they were resold, the shareholder was liable thereon to a creditor to whom the corporation became indebted before the transfer.

From Multnomah: JOHN B. CLELAND, Judge.

This is a suit by D. R. Hawkins, a judgment creditor of the Citizens' Investment Company, an insolvent corporation, to reach and subject to the payment of his judgment unpaid balances on the shares of the capital stock of the company subscribed for by Geo. S. Clark, A. S. Nichols, C. L. Nichols, and W. A. Gordon.   The complaint, after alleging the organization of the company, the loan of $6,000 to it by L. L. Hawkins on September 19, 1891, and the execution of its note therefor on May 1, 1893, the loan of $3,500 to it by E. A. King, and the execution of its note therefor on February 21, 1894, the assignment by King of the latter note to Hawkins, and by Hawkins of both notes to the plaintiff, his recovery of a judgment thereon against the corporation, upon which there was due and unpaid at the commencement of this suit about $8,000, and the insolvency of the corporation, further alleges that the defendant Clark subscribed for and became the owner of ten shares of the capital stock of the company on March 15, 1890, one share June 13, 1890, one share January 12, 1891, three shares July 11, 1891, and five shares December 12, 1894, and that there remains due and unpaid thereon the sum of $1,044.60 and interest; that defendant A. S. Nichols subscribed for and became the owner of five shares on March 11, 1889, five shares Febru-

38 OR.—35.

ary 21, 1890, five shares April 23, 1890, five shares June 14, 1890, five shares December 5, 1890, five shares July 23, 1891, and thirteen shares May 16, 1894, upon which there is due and unpaid $511.20 and interest; that the defendant C. L. Nichols subscribed for and became the owner of fifteen shares of the capital stock of the company April 23, 1890, five shares December 5, 1890, three shares July 23, 1891, and two shares March 22, 1892, upon which there is due and unpaid $220 and interest; that the defendant Gordon subscribed for and became the owner of five shares of the capital stock of the company on March 30, 1891, and one share July 11, 1891, upon which there is due and unpaid $350 and interest; that all of such subscriptions are in terms as follows:

State of Oregon, ⎱ ss.
COUNTY OF MULTNOMAH, ⎰

We, whose names are hereby subscribed, agree to take the number of shares of the capital stock of the Citizens' Real Estate and Investment Company, of Portland, Oregon, a private corporation duly organized under the laws of the State of Oregon, set opposite our respective names, and to pay therefor the par value thereof in United States gold coin, at the rate of five dollars per month for each share subscribed, until the same is fully paid.

That the by-laws of the company provide that "the stock of this corporation shall be paid for in monthly installments of five per cent. upon the par value thereof."

The defendants Clark and the two Nicholses answered jointly, and, after denying certain allegations of the complaint, alleged that the pretended assignments of the notes mentioned in the complaint by E. A. King and L. L. Hawkins to the plaintiff were without consideration, and that Hawkins and King are the real parties in interest in this suit, which is being prosecuted in the name of D. R. Hawkins for their use and benefit; and, as a further and separate defense

for Clark, aver that while it appears from the stock book of
the corporation that on March 15, 1890, he subscribed for
ten shares, such apparent subscription was a mistake, and
should have been for five shares only, and that such shares
were fully paid up before the commencement of this suit;
that the shares alleged to have been subscribed for on June
13, 1890, and January 12 and July 18, 1891, were issued to
him in payment of dividends declared by the corporation,—it
being expressly understood and agreed by the corporation,
its stockholders and officers, that he was not to be personally
liable thereon, but such stock was to be representative of his
share in the profits arising out of the business of the com-
pany; that on November 21, 1894, such stock was retired
and canceled by a resolution of the stockholders of the cor-
poration, and has never since been considered by any one con-
nected with the company as of force or effect; that the alleged
subscription of December 12, 1894, was conditional, and
never became operative or binding because the conditions
upon which it was made were never complied with.    The de-
fendant A. S. Nichols admits that he subscribed for five
shares of the capital stock of the company on March 11,
1889, and five shares on February 21, 1890, which he alleges
were fully paid up before the commencement of this suit; and
as to the alleged subscriptions of April 23, June 4, and De-
cember 5, 1890, and July 23, 1891, he adopts all that part of
Clark's separate defense in reference to the so-called dividend
subscriptions; that as to the thirteen shares, under date of
May 16, 1894, he avers that twelve shares were subscribed
for by another person and transferred to him before the
commencement of this suit, and have been fully paid up, and
the other was for dividend stock, and is subject to the same
defense as other like stock.    The defendant C. L. Nichols
admits that he subscribed for fifteen shares of the capital
stock of the company on April 23, 1890, and avers that they
were fully paid up before the commencement of this suit;

that as to the alleged subscriptions of December 5, 1890, July 23, 1891, and March 22, 1892, he also adopts Clark's defense in reference to the dividend subscriptions.

The reply put in issue all the material allegations of the answer, and, for a further and separate defense to the affirmative matter therein, alleged that Clark ought to be and is estopped to aver that the subscription made in 1894 was upon a condition precedent, because he waived such condition and received and accepted certificates of stock on such alleged subscription, and has allowed himself to be charged on the books of the company as a stockholder. The defendant Gordon answered separately, and, after denying some of the allegations of the complaint, alleged that he subscribed for five shares of the capital stock of the corporation on March 30, 1891, and that the alleged subscription of July 11, 1891, was for stock issued to him in payment of dividends; that, as to the latter subscription, he adopts the separate defense of Clark, heretofore referred to, and, for a further and separate answer, alleges that on or about the first of September, 1891, for a valuable consideration, he sold, assigned, and transferred all his stock in the company to one Eugene D. White, since which time he has not been a stockholder and has had no interest in the corporation, and that neither the plaintiff nor his alleged assignors were creditors of the corporation at the time of such transfer. Upon the trial the court found the facts as to the defendants Clark and Nichols substantially as alleged in the complaint, except that Clark's subscription of December 12, 1894, was conditional, and had not become operative because the condition had not been complied with. It also found that Gordon had sold and assigned his stock, but that such sale was subsequent to the date when the indebtedness upon which plaintiff's judgment was rendered accrued, and therefore he was liable for an unpaid balance of $335 due on such stock, with interest. A decree was accordingly entered against the defendants for the unpaid balances.

due on the stock subscribed by them, with legal interest from the date the last installment became due, and defendants appeal, and plaintiff cross appeals.                AFFIRMED.

For A. S. and C. L. Nichols there was a brief over the name of *Williams, Wood & Linthicum,* with an oral argument by *Mr. Geo. H. Williams.*

For W. A. Gordon there was a brief over the name of *Bauer & Greene,* with an oral argument by *Mr. Cecil H. Bauer.*

For D. R. Hawkins there was a brief and an oral argument by *Mr. Harry K. Sargent.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1.   The contention is made for the defendants that L. L. Hawkins and E. A. King, and not the plaintiff, are the real parties in this litigation; but the judgment in plaintiff's favor and against the corporation is conclusive on this point. When a judgment is rendered against a corporation, it establishes the matter in litigation and the liability of the corporation to pay the debt; and this judgment is conclusive, in the absence of fraud, in a suit by the judgment creditor to enforce his remedy against the stockholders: 1 Cook, Corp. (4 ed.), § 209; 3 Thompson, Corp., § 3392; 2 Morawetz, Priv. Corp. (2 ed.), § 865.   So we think the defendants are precluded from questioning the validity or ownership of the judgment upon which the plaintiff is proceeding.

For convenience, the stock involved in this suit may be divided into three classes:  (1) Original stock, or that subscribed before the organization of the company; (2) what is known and designated in the record as "dividend stock"; (3) the alleged conditional subscription made by Clark on

December 12, 1894. The only controversy arising upon the subscription for the original stock is that made by the denial of the defendant Clark that he subscribed for ten shares on March 15, 1890, or any greater number than five shares. The stock subscription book of the company shows that Mr. Clark subscribed for ten shares, although he was charged on the books of the company with only five, and a certificate for the latter number issued to him. In his testimony he says that, according to his best recollection, he only subscribed for five shares; that he received a certificate for that number, and fully paid therefor before the commencement of the suit. He frankly admitted, however, when shown the original stock book, that the signature thereto, with the number and value of the shares, is in his handwriting. His counsel at the argument sought to explain this inconsistency by saying that five of the shares were for one Robert Janion, who was not a subscriber for stock, but whose name is written in pencil immediately above Clark's in the stock book, to whom a certificate for five shares was issued, which was receipted for by Clark for Janion, and afterwards paid up in full. The entry on the books and the circumstances of the case tend to support this position; but Mr. Clark, when asked on cross-examination if it was possible for him to have subscribed for ten shares, with the intention of letting some one else have five of them, said that it was not, and on further inquiry he said that the name of Robert Janion did not occur to him in any way in connection with the matter. Upon this testimony, there seems to be no escape from the conclusion that Clark subscribed and became liable for ten shares, and the fact that he was only charged on the books and accounts with five, and no demand was made upon him for payment for the other five, cannot affect his liability to the creditors of the concern: *Balfour* v. *Baker City Gas Co.,* 27 Or. 300 (41 Pac. 164).

2.   The condition attending the issuance of what is called

the "dividend stock" was substantially as follows:   The corporation had what it termed an "appraisement committee," charged with the duty of valuing the company's property from time to time, and when such value exceeded the first cost a dividend based upon the cash paid in on stock subscribed was declared, to cover such excess.   In pursuance of this plan a dividend of 200 per cent. was declared on May 20, 1890, to be "applied in payment of any installments due or to become due on any additional subscriptions to the capital stock of this company by the present stockholders thereof," and the secretary was authorized to open stock books for such subscription.   Of this dividend, Mr. Clark was entitled to $50.   He thereupon signed the original contract of subscription for one share of the capital stock, agreeing to pay therefor the par value in gold coin at the rate of $5 per month, and received a certificate therefor, upon which was indorsed $50, the amount of the dividend due him.   On October 21, 1890, a similar dividend of 30 per cent. was declared, "to be paid in stock of a new issue," of which Mr. Clark was entitled to $75; and he again signed the original subscription contract for one share, receiving a certificate as in the former case, with a credit of $75 indorsed thereon. On June 16, 1891, another dividend, of 20 per cent., was declared, of which Clark was entitled to receive $140 "in stock of a new issue"; and he again signed the original contract of subscription, for three shares, and received a certificate in the usual form therefor, upon which was indorsed the amount of his dividend.   The same course was pursued in the case of the other defendants, the amount of the subscription in one instance being as high as five shares on a dividend of $180.   On November 21, 1894, after the debt upon which plaintiff's judgment is founded had been incurred, a stockholders' meeting of the company was held, at which a resolution was adopted instructing the secretary to "call in and cancel all certificates representing" the dividend

stock, and the secretary thereupon credited each of such stockholders with the amount remaining unpaid on the face of his stock. The difference between the par value of the stock so subscribed for and the dividends has never been paid, and the liability of the defendants to the plaintiff therefor is the principal question in this case. The defendants contend that they incurred no personal liability by reason of their subscriptions; that it was so understood and agreed between them and the corporation, but that, if otherwise, they were released by the resolution of the company retiring and canceling the stock; while the plaintiff insists that, if the resolution referred to is valid at all, it operated to retire the stock to the extent of the dividend only, and not the difference between such dividend and the face value. The oral testimony would seem to indicate that it was "the understanding" at the time that subscribers for dividend stock should not be liable to pay any money thereon. Their liability, however, cannot be so determined, but must be ascertained from the actual contract which they made. By it they agreed "to take the number of shares of the capital stock in the company set opposite" their names, and "to pay therefor the par value thereof in United States gold coin, at the rate of five dollars per month for each share subscribed, until the same is fully paid"; and the certificates issued to and accepted by them are to the same effect. It would seem clear, therefore, that by their contract the subscribers became bound for the difference between the amount of the dividend and the face value of their stock, and no subsequent action of the corporation or its officers attempting to relieve them from such liability could affect the rights of existing creditors: 1 Morawetz, Priv. Corp. (2 ed.), §§ 109, 111; *Balfour* v. *Baker City Gas Co.*, 27 Or. 300 (41 Pac. 164); *Bedford R. R. Co.* v. *Bowser,* 48 Pa. 29; *Upton* v. *Tribilcock,* 91 U. S. 45.

3. We come next to the alleged subscription of Clark

made in 1894.    The evidence shows that the company was
at the time financially embarrassed, and that White, its presi-
dent, and L. L. Hawkins, its treasurer, undertook to increase
its capital by soliciting additional subscriptions for stock.
A writing of some sort was prepared for the signatures of
the stockholders, which was signed by Clark and others.  The
writing has been lost, and is not in evidence, but all the wit-
nesses agree that it was not to become binding on any of
the subscribers unless signed by all, or practically all, of
the stockholders of the company.    Only a small percentage
of them were willing to do so, however, and the scheme to
thus increase the capital did not succeed, and was subse-
quently abandoned, and therefore Clark's subscription never
became binding upon him:   *Beloit & M. R. R. Co.* v. *Pal-
mer,* 19 Wis. 574; *Brewers' Ins. Co.* v. *Burger,* 10 Hun, 56.
Some time in March, 1895, however, the list was delivered
to or came into the hands of the secretary, who entered the
names of the signers in the books of the company as sub-
scribers to its capital stock, and a certificate for five shares
was issued and delivered to Mr. Clark, who thereafter made
several payments thereon, amounting in all to $40; and the
contention is that, by accepting such certificate and making
payments thereon, he waived the condition on which his sub-
scription was made, and became irrevocably bound as a
stockholder.    The evidence shows, however, that when the
certificate was issued and delivered to him he supposed all
the conditions of the contract had been complied with, and
the list properly delivered to the company, and, acting on this
assumption, accepted such certificate and made the payments
on the stock, so there was no ratification or waiver of the con-
ditions:   *Denny Hotel Co.* v. *Gilmore,* 6 Wash. 152 (32 Pac.
1004) ; *Birge* v. *Browning,* 11 Wash. 249 (39 Pac. 643).

4.   In entering the decree against the defendants, the
trial court included interest on the unpaid balances due on
their subscriptions from the date the last installments be-

came due; and this, it is insisted, is error. As already noted, both the subscription contract and the by-laws of the company provided that payments for stock should be made in monthly installments; hence no call was necessary, but the payments became due at stated times, by virtue of the contract of subscription. The statute provides that "all moneys after the same become due" shall bear interest: Hill's Ann. Laws, § 3587. And, therefore, as between the corporation and the subscribers, the unpaid installments would clearly bear interest from the date they became due: 1 Cook, Corp. (4 ed.), § 112; *Gould* v. *Town of Oneonta,* 71 N. Y. 298; *Rikhoff* v. *Brown's Machine Co.,* 68 Ind. 388; *Goddard* v. *Ordway,* 94 U. S. 672. And, as the unpaid subscriptions are assets of the corporation which a creditor may subject to the payment of his claim, no sufficient reason appears why he may not also collect such interest.

5. The remaining question is as to the liability of the defendant Gordon for the unpaid balance on stock subscribed by him, which depends upon whether his sale and transfer were prior or subsequent to the incurring of the indebtedness upon which plaintiff's judgment is based. It is admitted that the sale was a voluntary one, and therefore he was liable only to existing, not subsequent, creditors: Hill's Ann. Laws, § 3230. The loan for which the Hawkins note was given was made September 19, 1891; and Gordon contends that he sold his stock to Eugene D. White on the first of that month, while the plaintiff insists that the sale was made to one Hart, March 10, 1892. The assignment of the certificate and the transfer on the books of the corporation bear date March 10, 1892. Gordon testifies that on September 1, 1891, he assigned in blank and delivered his stock to White, the president of the corporation, and received from him $225, the amount he had already paid thereon; that he did not turn the stock over to White to find a purchaser, but that White took it and paid him therefor, and he supposed

at the time that he had parted with all his interest therein. White says that, to the best of his recollection, Gordon, late in the summer of 1891, wanted to sell his stock, and that he put the matter "in our hands, and we either purchased it for ourselves or for some one else, but it was purchased"; that the date of the assignment "might not have been the date the property was sold. We frequently bought shares or purchased them for some one else, and didn't transfer the stock for some time. It would lie there before transferred, and frequently we had stock there that was assigned in blank by the party who owned it." The general rule is that the transfer of stock by a shareholder in a corporation does not relieve him of liability to the creditors of the concern until such transfer is perfected by being registered on the books of the corporation: 3 Thompson, Corp., § 3283. This doctrine is based on the theory that one who permits his name to appear and remain upon the books of a corporation as a shareholder is estopped, as between himself and the creditors of the concern, to deny that he is a shareholder. But the defendant Gordon contends that when he assigned his stock in blank and delivered it to White, the president of the corporation, he did all that can be required of him, and such act, in equity, is equivalent to a transfer on the books of the concern. In support of this position he cites *Whitney* v. *Butler,* 118 U. S. 655 (7 Sup. Ct. 61). In that case the purchase of the stock of a bank was made by the bank's agent for one of its customers, and the certificate of stock, with a power of attorney attached, was delivered to the president of the bank, with the intention that the transfer should be made on the books. In an action against the original shareholder by the receiver of the bank to recover the amount of the assessment on such stock, it was held that the responsibility of the shareholder ceased upon the surrender of the certificate to the bank, and the delivery to its president of a power of attorney intended to effect the transfer of the stock

on the books of the bank. The doctrine, however, can have no application to a case like the one at bar, where the stock is delivered to the president of the corporation as a vendee, and not for the purpose of having the transfer thereof made on the books of the company. The distinction between the case in hand and the one cited is illustrated and pointed out by the Supreme Court of the United States in the subsequent case of *Richmond* v. *Irons,* 121 U. S. 27, 58 (7 Sup. Ct. 788), which, so far as the point involved here is concerned, is substantially on all fours with the case at bar. Finding no error in the record, the decree of the court below is affirmed.

AFFIRMED.