Points decided.

[Argued March 15, 1893;  decided March 28, 1893.]

## FAIRVIEW R. R. CO. *v.* THOS. SPILLMAN.

### [S. C. 32 Pac. Rep. 688.]

CORPORATIONS— CONDITIONAL STOCK SUBSCRIPTIONS— CODE, § 3221.— Conditional subscriptions to the capital stock of a corporation, made before an organization is effected, are not to be considered as absolute and unqualified, or the conditions attached thereto void, under the Oregon statute requiring the corporate articles to be filed, and the charter obtained, before any stock is subscribed (Code, § 3221), since such subscription is only an agreement to take stock in a corporation thereafter to be organized, and any lawful condition may be attached thereto.

ORGANIZATION OF CORPORATION— CODE, § 3222.— Conditional subscriptions to the capital stock of a corporation, made before organization thereof, cannot be counted in determining whether the requisite amount of stock has been subscribed to authorize the organization of the corporation, under Hill's Code, § 3222.

STOCK SUBSCRIPTIONS— ASSESSMENTS.— It is an implied part of the contract of an original subscriber to the stock of a corporation afterwards to be organized, that he is not liable to pay assessments on the stock before one-half of the capital stock is subscribed.

ACTION FOR STOCK SUBSCRIPTION— CODE, § 3222.— No action can be maintained on a subscription to the capital stock of a corporation, made prior to its organization, where, at the time of an attempted organization thereof, one-half of the capital stock had not been subscribed, as required by Hill's Code, § 3222, unless there has been some act on the part of the subscriber constituting a waiver of such requirement.

WAIVER OF CONDITIONS TO SUBSCRIPTION — ESTOPPEL.— Where a stock subscriber, knowing that the amount of stock necessary to organize the corporation has not been taken, attends the meetings of the stockholders, participates in the organization of the company, or does other acts indicating a consent to become a stockholder, and acts as such before the requirements of the statute have been complied with, he waives the implied conditions of his subscription, and cannot thereafter refuse to pay the assessments against his stock on the ground that the corporation was not legally organized.

IDEM.— A subscriber to the capital stock of a corporation does not waive a statutory condition that a certain amount of stock shall be subscribed before the corporation can be organized, by consenting to, and waiving notice of, a stockholders' meeting on three occasions, and voting by proxy at one special meeting, where he does not then know that the required amount of stock has not been subscribed.

CORPORATIONS— COLLATERAL ATTACK.— The fact that a corporation whose attempted organization was made before the required amount of its capital stock had been subscribed is a corporation *de facto*, so that its existence cannot be questioned collaterally, will not enable it to recover

against a subscriber to its capital stock, where the conditions upon which his subscription was made have not been complied with or waived by him.

Multnomah County: E. D. SHATTUCK, Judge.

Action by the Portland and Fairview Railroad Company against Thomas Spillman to recover two hundred dollars because of a subscription for that amount made by the defendant, as an original subscriber to the capital stock of the plaintiff company. The subscription was made before the organization of the corporation. The defendant pleaded in abatement that the plaintiff was never legally organized, because at the time of the election of the board of directors one-half of the capital stock had not been subscribed. This was held good on demurrer, and, upon a trial without a jury, the court found that at the date of the attempted organization one-half of the capital stock of the corporation had not been subscribed; that the corporation had no authority to organize, and no authority to call on defendant for payment of his subscription, and that the complaint should be dismissed. From the judgment entered on these findings the plaintiff appealed.    Affirmed.

*Warren E. Thomas ( F. A. E. Starr* on the brief), for Appellant.

*Francis D. Chamberlain ( C. U. Gantenbein* on the brief), for Respondent.

BEAN, J.—The amount of the capital stock of plaintiff, as provided in its articles of incorporation, is fifty thousand dollars. On June 29, 1891, the date of the attempted organization, the total amount of subscriptions for stock was twenty-nine thousand two hundred and sixty-five dollars, but five thousand dollars of this amount was upon the condition that the amount of stock subscribed, exclusive of this subscription, be not less than twenty-five thousand dollars; another five thousand dollars was on condition that a certain tract of land owned

by the subscriber should have a five-cent fare; and three thousand six hundred and eighty-three dollars and thirty-three cents of the remaining stock was subscribed on condition that the proposed road of plaintiff should be located on a certain route.   It will thus be observed that one-half of plaintiff's stock had not been subscribed unconditionally at the time of its attempted organization; but it is argued by counsel for plaintiff that the conditional subscriptions, having been made before an organization was effected, must be considered absolute and unqualified, and the conditions attached thereto void. In support of this conclusion we are cited to *Putnam* v. *Railroad Co.* 16 Wall. 396; *Caley* v *Phila. Railroad Co.* 80 Pa. St. 367, and *Boyd* v. *Peach Bottom Ry. Co.* 90 Pa. St. 172.   These decisions were made under the statutes of Pennsylvania and Indiana, which require, as a condition precedent to the granting of a charter for a railroad corporation, that a certain amount of the capital stock shall be subscribed, and upon the faith of which the charter is issued or granted:   2 Brightly, Purd. Dig. 1412; Rev. Stat. Ind. § 3885.   Under these statutes, any conditions attached to the subscription are held void as a fraud upon the state, upon corporate creditors, and upon the other subscribers   *Pittsburg R. R. Co.* v. *Biggar*, 34 Pa. St. 455. It is thus apparent that these authorities can have no application to a corporation organized under our statute (sections 3220, 3221, 3222, Hill's Code), which provide that the articles of incorporation shall be filed, and a charter obtained, before any stock whatever is subscribed. In fact, there is no person authorized to receive subscriptions to the stock of the corporation until the articles of incorporation are filed, and the charter obtained, and then the subscription is only an agreement to take stock in a corporation thereafter to be organized with the power and authority conferred by the articles of incorporation.   This agreement or offer may have attached thereto any lawful condition, and will be regarded as nothing more than an offer to become a shareholder or

take shares when the condition shall be performed; and, if made prior to the organization of the company, it is at most only an offer to become a shareholder upon the terms indicated, and the offer can be accepted only by the proper agents of the company after organization. It would seem clear, therefore, that such subscription cannot be counted in determining whether the requisite amount of stock has been subscribed to authorize the organization of the corporation, as conditional subscribers cannot become shareholders until the conditions upon which the subscription was made have been performed, and these conditions cannot be accepted until after the organization of the company: Morawetz, Corp. §§ 81, 141; Cook, Stocks & Stockh. § 180; 1 Spelling, Corp. § 330; *Agricultural Works* v. *Parkhurst*, 54 Iowa, 357 (6 N. W. Rep. 547); *Cent. Turnpike Corp.* v. *Valentine*, 10 Pick. 142; *Troy Ry. Co.* v. *Newton*, 8 Gray, 596; *Proprietors* v. *Chapin*, 6 Cush. 50. It follows, then, that at the time of the attempted organization of plaintiff, the requisite amount of stock had not been subscribed to enable it to effect an organization.

By the statute of this state one-half of the capital stock of a private corporation must be subscribed before the corporation can be organized, or an assessment be lawfully made upon its subscribed stock. Section 3222, Hill's Code. This is an implied part of every contract of subscription, and the contract is not binding or enforceable against the subscriber until one-half of the capital stock has been subscribed, and the company legally organized. It is a rule of law, too well settled to be now questioned, that subscribers to the capital of a corporation prior to its organization cannot be required to pay assessments upon their shares until the company is authorized by law to begin the prosecution of its enterprise: Morawetz, Corp. § 137; Thompson, Liab. Stockh. § 120; Cook, Stocks & Stockh. § 176. Until the company is organized, a subscription for stock is a mere proposition or agreement to take a specified number of shares in a

corporation thereafter to be formed, on condition that the requisite number of shares for the organization of the company shall be filled up by subscription, and the company legally organized, and is not a binding promise to pay. Until this condition is fulfilled, the obligation of the subscriber is inchoate merely. This condition regarding the amount of the stock subscription, however, is one that the subscribers may waive, and, with their assent, the corporation may not only organize, but do all other things incident to, and necessary for, the prosecution of the particular business or enterprise for which it was organized. If, with knowledge of the fact that the requisite amount of stock has not been taken, they attend the meetings of the company, participate in its organization, or do other acts indicating a consent to become shareholders, and act as such before these conditions have been complied with, they cannot afterwards refuse to perform their contract upon the ground that the company was not legally organized, or that the implied conditions of their subscription have not been complied with: 2 Morawetz, Corp. §§ 741–743 ; Cook, Stocks & Stockh. § 181; Thompson, Liab. Stockh. § 120 ; *Proprietors* v. *Chapin,* 6 Cush. 50 ; *Danbury R. R. Co.* v. *Wilson,* 22 Conn. 435 ; *Hager* v. *Cleveland,* 36 Md. 476 ; *Central Plank Road Co.* v. *Clemens,* 16 Mo. 359 ; *Home Stock Ins. Co.* v. *Sherwood,* 72 Mo. 462 ; *Meadow Dam Co.* v. *Gray,* 30 Me. 547 ; *Hunt* v. *Kansas Bridge Co.* 11 Kan. 412 ; *Sharpley* v. *L. & E. Ry. Co.* 2 Ch. Div. 663. But no such facts appear in this case. By looking into the record we find that on three several occasions defendant consented to, and waived notice of, a stockholders' meeting, and on one occasion he voted by proxy at a special meeting of stockholders called ''for the purpose of definitely locating the termini of the railroad to be constructed, and to authorize the making and filing of supplementary articles of incorporation in accordance with the action of the stockholders at such meeting.'' It does not appear, nor is it claimed, that at the time of such waiver of notice, or par-

ticipation in the stockholders' meeting, he knew that the required amount of stock had not been subscribed, and without such notice it is not perceived how he can be said to have waived the condition of his subscription. A waiver is "the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it": Anderson, Law Dic. "Waiver"; *Hoxie* v. *Home Ins. Co.* 32 Conn. 40 (85 Am. Dec. 240); *Shaw* v *Spencer,* 100 Mass. 395 (97 Am. Dec. 107; 1 Am. Rep. 115).

"There is no better settled principle," says the court in *State* v. *Churchill,* 48 Ark. 445 (3 S. W. Rep. 360), than "that to hold one bound by any word or act as a waiver, it must be shown that he so spoke or acted with a knowledge of all the facts and circumstances attending the creation of the right he is alleged to have waived." It was the duty of the corporation, after the articles of incorporation were filed, to open books and receive subscriptions to the capital stock of the corporation, and they were authorized, as soon as one-half of the stock was subscribed, and not before, to give notice to the subscribers to meet and elect directors:   Section 3222, Hill's Code.   In waiving formal notice of such meeting, defendant had a right to assume that the law had been followed, and the requisite amount of stock had been subscribed, and voting by proxy at the stockholders' meeting, in view of the object of such meeting, is not in any way inconsistent with the contract of subscription, and does not indicate an intention to waive the conditions upon which it was made.   It seems to us clear that the facts shown by the record are not sufficient to estop the defendant from insisting, as a defense to this action that the conditions upon which his subscription was made have not been complied with, and that the company was not lawfully organized: *Livesey* v. *Omaha Hotel Co.* 5 Neb. 50 ; *Oldtown R. R. Co.* v. *Veazie,* 39 Me. 571.

It was insisted at the argument that plaintiff is at least a corporation *de facto,* and that its existence cannot

be questioned in a collateral way.  Conceding this to be true, there.is a wide difference between a question of the existence of the company as a corporate body, and the liability of defendant for his subscription to its capital stock.  It may be a corporation *de facto*, and entitled to maintain actions as such, but it cannot recover against a subscriber to its capital stock until it shows that the conditions upon which such subscription was made have either been complied with or waived by the subscriber. These are conditions precedent to the right to enforce the obligations of its subscribers, and in any action brought for that purpose the subscriber may insist upon their performance before a recovery can be had: *Hager* v. *Cleveland*, 36 Md. 476; *Swartwout* v. *Michigan Air Line R. R. Co.* 24 Mich. 389.

From these considerations we conclude that the judgment of the court below should be affirmed, and it is **so** ordered.