Argued December 1, 1921, affirmed January 10, 1922.

# MYRTLE POINT MILL & LUMBER CO. *v.* CLARKE. ﹐

(203 Pac. 588.)

**Evidence—Approval of Minutes may be Shown by Parol.**

1. It may be shown by parol that minutes of a meeting of stockholders were approved at a subsequent meeting, though not stated in the minutes.

**Corporations—Demand for Payment of Installments of Stock Subscription not Necessary Where Agreement Fixes Time Therefor.**

2. No demand for payment of installments of stock subscription is necessary where the agreement provides for the time for payment thereof.

**Appeal and Error—Admission of Carbon Copy Held Harmless if Error.**

3. In an action by corporation against stock subscriber, it was harmless, if error, to allow introduction in evidence of carbon copy of letter showing demand for payment of the amount secured in the absence of a showing that the original could not be produced, where the subscription agreement stipulated the time for payment.

**Corporations—Not Necessarily Bound by Representations Made by Subscriber for Stock Before Organization—Subscriber not Entitled to Rely on Representations of Cosubscriber Where He Did not Plead Corporation's Notice Thereof, or They Were Present in Cosubscriber's Mind While Acting for It.**

4. A corporation is not necessarily bound as to a subscriber for stock by false representations made by a cosubscriber before organization though with knowledge on his part of such statements, the cosubscriber became a director and secretary-treasurer, and the subscriber is not entitled to rely thereon in an action on his subscription where his pleading did not directly state that the corporation had notice of such false representations, or that they were present in the cosubscriber's mind while acting for it.

**Trial—Instructions must be Supported by Pleadings.**

5. There is no error in refusing an instruction academically correct where there is no pleading to sustain it.

**Corporations—Requested Instructions in Action on Stock Subscription not Sustained by Pleading.**

6. In an action on a stock subscription, the court properly refused to instruct that, if defendant withdrew his name or notified a certain cosubscriber that he wanted it taken from the subscription list before fifty per cent of the stock was actually subscribed, the jury should find that he withdrew his name before the corporation accepted his offer, and he would not be liable, was properly refused where the defendant pleaded that he did not ask for a withdrawal

until the day after organization, and admitted signing the subscription paper, which showed fifty per cent of the stock subscribed.

**Corporations—Subscribers Participating in Organization cannot Contend They Withdrew Subscriptions.**

7. Subscribers for stock who gave notice that they wished to withdraw, yet participated in organization of the corporation, and voted the shares subscribed, cannot contend that they withdrew, and their stock should be counted in determining whether or not fifty per cent was subscribed at time of the organization.

**Trial—Instructions Held not Contradictory.**

8. In an action by corporation on subscription agreement, an instruction that, though some of the subscribers may have given notice that they wished to withdraw the whole or some part of their subscription, yet if they went on and participated in the organization of the corporation, and voted the shares for which they subscribed in the first instance, then those shares should be counted as participating stock in making up the one-half necessary to be subscribed before organization, was not contradictory to other instructions, to the effect, that if the subscription had been withdrawn before the organization, then there was not enough stock subscribed to sanction an organization.

**Evidence—Subscription Agreement cannot be Varied by Parol, and Evidence of Condition Inadmissible.**

9. A corporate stock subscription agreement or list is subject to Section 713, Or. L., providing that a writing is to be considered as containing all terms of the agreement, and in action by corporation thereon defendant subscriber cannot contend that the subscription agreement or list was in part conditional, and hence that fifty per cent of the stock was not subscribed for, as appeared therein, in the absence of fraud, mistake, or invalidity of the agreement.

**Corporations—Signer of Subscription Agreement Estopped to Claim Subscription Conditional.**

10. One signing stock subscription list or agreement cannot contend, as against the corporation or others, that his subscription was for collateral purposes merely, such as to make deficit necessary to be filled in order to validly organize.

From Coos: J. S. COKE, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. A. G. Thompson.*

7. Right to withdraw stock subscription, see notes in 16 **Ann. Cas.** 532; Ann. Cas. 1915C, 1113; Ann. Cas. 1916A, 699.

9. Admissibility of parol evidence to show conditional subscription to corporate stock, see notes in 19 **Ann. Cas.** 883; Ann. Cas. 1918C, 853.

For respondent there was a brief and oral argument by *Mr. Claud H. Giles.*

BURNETT, C. J.—It is a conceded fact that the defendant, together with J. O. Stemmler and eight others, signed the following agreement:

"Myrtle Point, Oregon, March 15th, 1918.

"We, the undersigned, do hereby subscribe to the amount of the capital stock, set opposite to our respective names towards forming a corporation to be known as 'Myrtle Point Mill & Lbr. Company, Inc.' with a capital stock of $25,000.00, to be divided into 250 shares of the par value of $100.00 per share, and agree to pay for same as follows: 40 per cent in 30 days; 40 per cent in 60 days and 20 per cent in 90 days."

The defendant subscribed for ten shares, $1,000. The total subscription of all the subscribers amounted to $12,500, exactly one half of the proposed capital stock of $25,000. The plaintiff, stating that it is a corporation duly organized and existing under and by virtue of the laws of Oregon, pleads the writing mentioned, both according to its legal effect and by copy attached to and made part of its complaint, states the subsequent organization of the plaintiff at a meeting of the stockholders in which the defendant and the other signers took part, and declares that the corporation has been duly incorporated as before alleged, and is now doing business. A demand upon the defendant for payment of the amount of his subscription, and his failure to do so except in the sum of $50 paid by him March 15, 1918, are alleged, with a demand for payment.

The following denial appears in the answer:

"Denies each and every allegation contained in paragraphs I, II and III of said complaint except that

defendant did place his name on said purported list under the conditions and circumstances as hereinafter set forth, that there was a pretended meeting of the parties who had put their names on said pretended subscription list and defendant was present thereat and that defendant, at all times, has refused to make payment to plaintiff.''

Further answering, the defendant alleges in substance that Stemmler was the organizer and promoter of the plaintiff organization, ''which defendant, upon information and belief, alleges to be now a purported *de facto* corporation,'' and that Stemmler at all times has been and now is its secretary and general manager. He also says that at all times mentioned, both before and after the attempted organization of the corporation, Stemmler was the attorney for the defendant and that the latter relied upon his advice at all times and believed his advice and information to be true.. After reciting various efforts of Stemmler to get the defendant to subscribe for stock, and his refusal to do so, he pleads another effort on the part of Stemmler to induce him to subscribe, and declares:

''That said Stemmler further falsely and fraudulently informed defendant that if he would place his name on the subscription list as set forth in plaintiff's exhibit 'A' that he, the defendant, would be under no obligations to take stock in the corporation and would not obligate himself in any manner to pay for any stock and falsely represented to defendant that his name would be used only for the purpose of organization and that after said corporation was organized his name would be scratched or taken off the subscription list and further represented to defendant that he had to have defendant's name on said list temporarily in order to have 50 per cent of the capital stock subscribed to be able to organize said

evening, otherwise he would be barred from taking up an option and lose a large amount of money advanced upon purchasing a saw mill to be taken over by the said corporation to be thus organized.''

He then says that he believed the representations to be true and signed the writing, acting upon the advice, misrepresentations and false statements of Stemmler, and lent his name to Stemmler for use, as stated, and without intention on the part of the defendant to make an offer to a corporation to be organized, to subscribe for or take capital stock therein. Finally, in his first separate answer, he says in substance that Stemmler and others whose names appear upon the subscription list met on the evening of March 25, 1918, and attempted to adopt purported by-laws and to elect a board of directors, but said attempt was had before 50 per cent of the capital stock was subscribed, and that thereafter on March 26, 1918, and before the defendant was aware the representations of Stemmler were fraudulent, he demanded that the latter scratch defendant's name off the subscription list and release him from all obligation, if any were created; but that Stemmler refused to do so.

. As a further answer, he says that the defendant's name was attached to the subscription list March 25, 1918, after the articles of incorporation had been filed with the corporation commissioner, but before the attempt was made to organize. This allegation appears in the second answer:

''That at the time of the said attempted organization of said purported corporation one half of the capital stock had not been subscribed, in this, to wit: $2,000 of said purported $12,500 as shown by said subscription list was a conditional subscription and

$500 of said amount was withdrawn before said attempted organization.''

The defendant also says that he was not aware of the conditional subscription or that the withdrawal of $500 had reduced the subscription to less than one half of the proposed capital stock.

The new matter in the answer is challenged by the reply. A trial by jury resulted in a judgment for the plaintiff according to the prayer of its complaint, and the defendant appeals.

1. Passing the assignments of error that the verdict and judgment are against the evidence and contrary to law, and that the court erred in refusing to allow the defendant's motion for nonsuit, we come to the assignment that the court erred in admitting in evidence the minutes of the first meeting of the stockholders, without testimony showing that the same were approved or were authentic records of what occurred at the meeting. There is evidence in the bill of exceptions that the minutes were approved at a subsequent meeting, although the approval is not stated in the minutes themselves. This feature is controlled by *Handley* v. *Stutz,* 139 U. S. 417, where the fact that a resolution was adopted was not entered in the minutes of the corporation, but the court said:

''The failure to enter this resolution at the time it was adopted did not affect its validity, as most corporate acts can be proved as well by parol as by written entries.''

This case is cited with approval and applied in *Cannon* v. *Farmers' Union Grain Agency,* decided by this court December 27, 1921, where Mr. Justice BROWN said:

"In the absence of a record, the acts of corporations may be proved in the same manner as the acts of individuals": Citing many authorities.

2, 3. It is next urged that the court was wrong in allowing the introduction of a carbon copy of a letter written on April 1, 1918, by the plaintiff to the defendant, because there was no showing that the original could not be produced and because no demand had been made upon the defendant before the trial to produce the original letter. The letter in substance is a notice to the defendant of his delinquency and a demand for payment of the amount of his subscription. The allegation of demand for payment was immaterial. The defendant had signed a writing, quoted above, promising to pay the subscription, not upon call by the corporation but as follows: "40 per cent in thirty days; 40 per cent in sixty days; and 20 per cent in ninety days." In such cases, where the promisor stipulated to pay at a certain time, no demand is necessary. Action may be brought against him on such a promise, although the first notice he has of it is the service of process upon him. The admission of the carbon copy of the letter was at the most, harmless error.

4. Error is predicated on the refusal of the court to give this instruction:

"If you find that J. O. Stemmler made representations to defendant which were not true; that he knew they were not true and made them for the purpose of inducing defendant to sign the subscription list; that defendant did not know that they were not true and acted upon them to his detriment and would not have signed said subscription list except upon said representations, then you will find that said representations were false and fraudulent and you further find that defendant did not waive said false and fraudu-

lent representations and you further find that said J. O. Stemmler was elected a director and secretary-treasurer of said corporation upon its organization, you will find that plaintiff had implied notice of said false and fraudulent representations and your verdict will be for the defendant."

The requested instruction is vitiated by the feature which makes the corporation unqualifiedly liable for representations made by Stemmler before the corporation had an existence, merely because he happened to be elected a director and secretary-treasurer of the corporation after it came into being. Without dispute, all the alleged representations made by Stemmler were uttered before the organization of the corporation. He could not then be the agent of the concern. He and the defendant were dealing together as cosubscribers of the capital stock of the corporation, and the transaction, whatever it may have been, between them, does not necessarily bind the corporation, although with knowledge on his part of those statements Stemmler afterwards became its officer. In *Oliver* v. *Grande Ronde Grain Co.*, 72 Or. 46 (142 Pac. 541), the doctrine as stated in the syllabus is thus laid down:

"While a principal is bound by knowledge of the agent acquired while acting for his principal within the scope of his authority, a grain company is charged with its president's notice of a lien on grain, acquired independently of the company's business, only if such knowledge was present in his mind while transacting the company's business or was communicated to him under such circumstances as to lead a reasonable person to conclude that it must have been present in his mind when transacting the company's business."

See, also, *Saratoga Investment Co.* v. *Kern*, 76 Or. 243 (148 Pac. 1125). The pleading of the defendant

contains no foundation for the instruction, in that it does not directly state that the plaintiff had notice of the alleged misconduct of Stemmler or that the representations imputed to him were present in his mind during his actions for the plaintiff. .

5. The next assignment of error is attributed to the refusal of the court to instruct about the defendant's waiving the effect of the alleged false and fraudulent representations. As to this point, there is no waiver stated in any of the pleadings; and although the instruction may be academically correct in proper cases, yet there must be some pleading to sustain it.

6. Another instruction requested by the defendant and refused was to the effect that if the defendant withdrew his name or notified Stemmler that he wanted it taken from the subscription list, before 50 per cent of the stock was actually subscribed, then the jury should find that the defendant had withdrawn his name before the corporation had accepted his offer and he would not be liable as a subscriber to stock. This instruction is not applicable to the pleading of the defendant, which says he did not ask for a withdrawal until the day after the organization. Even then, as his pleading states, he applied to Stemmler; but it is not said that he applied to the plaintiff at any time to be released from his subscription. Again, he admits signing the subscription paper, which document shows that 50 per cent of the stock had been subscribed. He cannot say, therefore, that 50 per cent of the stock had not been subscribed. He cannot admit the execution of the paper, which on its face shows an absolute subscription for the required amount of stock, and contradict that by attributing a different legal effect to the document.

7, 8. The court gave one instruction to the effect that although some of the subscribers may have given notice that they wished to withdraw the whole or some part of their subscription, yet if they went on and participated in the organization of the corporation and voted the shares for which they subscribed in the first instance, then those shares should be counted as participating stock, in making up the one half necessary to be subscribed before organization. In *Hanley* v. *Stutz, supra,* the facts were almost exactly like the case in hand, and the court said:

"In this case the meeting was attended by all of the stockholders but two, who were represented by proxy, the vote increasing the stock was unanimous, and it does not lie in the mouth of those who participated in this act, or received the stock voted at this meeting, to question its validity."

In other words, subscribers cannot use the stock subscribed at the organization and vote it in the meeting, and then claim that they had withdrawn it. The instruction was not contradictory to other instructions given by the court, to the effect that if the subscription had been withdrawn before the organization, then there was not enough stock subscribed to sanction an organization. The court instructed on both sides of the question, to the effect that if the jury found the facts to be one way, it should give a verdict accordingly, and if on the other hand it found the facts to be the other way, the verdict should follow that finding.

9, 10. A great deal of the defendant's case is devoted to the contention that 50 per cent of the capital stock had not been subscribed, on the theory that the subscription list was in part conditional. The details of the condition are not stated. For that matter, the

whole preliminary subscription was conditional, in a sense, as an offer to take stock, provided the corporation should be organized. The writing, like any other creating an obligation between parties, is subject to the provision of Section 713, Or. L.:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of agreement, other than the contents of the writing, except in the following cases:—

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute * * ."

It is true, the validity of the agreement may be attacked on the ground of fraud inducing its execution on the part of the defendant, as has been attempted in this case, but otherwise it cannot be said that other terms were talked of in their negotiations about the matter which are not in the writing itself. In 14 C. J., page 562, it is said:

"Subscriptions made upon an agreement that they shall stand as subscriptions for collateral purposes merely, such as a subscription to make up a deficit necessary to be filled in order to the procuring of the charter, or subscriptions made at the request of an agent of the corporation to induce others to subscribe, but made on a promise that the subscriber will afterwards be released, are treated as absolute and binding subscriptions, and the unlawful agreement made between the corporation and the subscriber that he shall not be held bound thereby is discharged.

"Upon like grounds parol declarations or promises of officers of a company, made on public occasions, if admissible at all to invalidate a stock subscription,

cannot avail a subscriber who does not show that such declarations or promises amounted to fraud on the part of the company, inducing error on his part when he subscribed.

"For stronger reasons, collateral agreements with promoters or other third persons, whereby the subscriber is induced to become such, as an agreement to take his shares off his hands, will not afford ground of releasing him from his liability as a shareholder, although evidence of such agreements may be admissible in an action for assessments for the purpose of showing fraud.

"Nor is parol evidence of agreements with previous subscribers to the capital stock, made at or before their signing, and inconsistent with the written terms of their subscriptions, admissible in an action for assessments."

*Portland & Fairview R. R. Co.* v. *Spillman,* 23 Or. 587 (32 Pac. 688), cited by the defendant as to conditional subscriptions, is not applicable here in that respect, for in that instance the conditions were in writing appended to the signatures attached to the subscription paper.

The subscribers to the capital stock in the present instance were uniting on certain terms in an enterprise looking to the formation of a corporation with certain capital stock. For the protection of the public and those who deal with them, such institutions are required by law to specify the amount of their capital stock, and when subscribers proceed to organize the corporation, by operation of law they declare to the public that at least half of the capital stock is subscribed. It does not lie in the mouth of the defendant to say that he engaged in a scheme to represent to the public that the concern he assisted in initiating had the required capital stock subscribed,

whereas in fact and in truth he had not subscribed or had withdrawn his subscription.

On the disputed questions of fact the jury found against the defendant. There is no error in the instructions, or otherwise, so far as the record discloses. The judgment is affirmed.     AFFIRMED.

McBRIDE, HARRIS and RAND, JJ., concur.

---

-Argued December 2, 1921, affirmed January 10, 1922.