Argued March 5, affirmed April 29, 1924.

## H. C. ATWELL *v.* ALFRED SCHMITT.

(225 Pac. 325.)

**Corporations—Creditor's Complaint to Enforce Stock Subscription Need not Allege That Defendant was Stockholder When Debt was Created or Suit Commenced.**

1. In corporate creditor's suit against stockholder of orchard company to enforce payment of subscriptions complaint was not demurrable because it failed to state that defendant was a stockholder at time plaintiff's debt was created and at commencement of suit, in view of Article XI, Section 3, of the Constitution, and Section 6872, Or. L.

Corporations—Stockholder's Liability Under Constitution and Statutory Provisions Stated.

2. Article XI, Section 3 of the Constitution, and Section 6872, Or. L., are intended to make indebtedness of every stockholder, on unpaid subscription, liable to be applied in satisfaction of indebtedness due any creditor of insolvent corporation after remedies against it are exhausted, regardless of when or in what manner claim arose.

Corporations—Transfer of Options at Gross Overvaluation not Payment of Stock Subscription.

3. In corporate creditor's suit to enforce payment of stock subscription, which defendant claimed had been paid in full, evidence that promoters, of which defendant was one, had turned in options on realty for which they had expended about $400, as payment for $200,000 par value of stock, being all the common stock, *held* not to show payment of stock subscription in property, notwithstanding Section 6872, Or. L., making judgment of directors as to value of property so taken conclusive.

Corporations—Directors' Valuation of Property Taken in Payment of Stock not Conclusive Unless Honest.

4. Directors' judgment on value of property or stock taken by corporation in payment for its own stock, which Section 6872, Or. L., makes conclusive in absence of fraud, must result from honest attempt of directors, acting not for individual interest, but only for corporation, to fix true valuation, anything less being dishonest and fraudulent.

Corporations—Creditor Held not Guilty of Laches in Commencing Suit to Enforce Stockholder's Liability.

5. In a corporate creditor's suit to enforce payment of stock subscription to be applied on his judgment against corporation for services, where it appeared that he was employed from February 1, 1911, to June 1, 1913, that he recovered judgment October 22, 1915, execution being immediately issued and returned unsatisfied, and that he commenced suit October 27, 1915, *held*, that he was not guilty of laches, notwithstanding that some of the other stock subscribers had died or removed from state.

Corporations—Judgment Against Corporation Conclusive in Creditor's Suit on Stockholder's Subscription.

6. In absence of fraud, judgment against corporation is conclusive in suit by judgment creditor to enforce stockholder's liability on unpaid stock subscription.

Corporations—All Defaulting Subscribers Need not be Joined in Suit to Enforce Liability for Unpaid Subscription.

7. A corporation creditor in suing to enforce payment of corporate stock subscription may sue one subscriber and need not join other defaulting subscribers, a subscriber's liability being a several, distinct and limited one.

111 Or.—7

From Linn: GEORGE G. BINGHAM, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Weatherford & Wyatt,* with oral arguments by *Mr. J. K. Weatherford* and *Mr. G. G. Smith.*

For respondent there was a brief over the name of *Messrs. Hill & Marks,* with an oral argument by *Mr. Wm. G. Hare.*

RAND, J.—Plaintiff, a corporate creditor of the Linnhaven Orchard Company, a domestic corporation, recovered judgment against the corporation, and an execution on the judgment was issued and returned unsatisfied. Plaintiff then brought suit against the defendant, who was one of the original subscribers to the capital stock of the corporation, seeking to enforce payment by defendant of his alleged unpaid subscription in order to have the same applied in satisfaction of plaintiff's judgment and of the claims, if there are such claims, of other corporate creditors. The plaintiff had decree and the defendant has appealed.

1. The defendant demurred to the complaint and now objects to its sufficiency upon the ground that it fails to state that the defendant was a stockholder at the time the plaintiff's debt was created and at the time this suit was commenced. In support of this contention he cites, among others, the case of *Sargent* v. *Waterbury,* 83 Or. 167, 181 (161 Pac. 443, 163 Pac. 416). In that case the superintendent of banks, while engaged in administering the assets and winding up the affairs of an insolvent bank, had, on behalf of the creditors of the bank, commenced suit against certain defendants to recover upon their alleged un-

paid stock subscriptions to the capital stock of another bank, to the assets of which the insolvent bank had succeeded. Most of the defendants in that suit to whom the stock had been issued had sold their stock long before that suit was commenced, and at the time of its commencement their combined holdings aggregated only 30 shares of the 850 shares upon which the suit was based. There was no allegation in the complaint in that suit that the defendants were stockholders of the insolvent bank at the time the suit was commenced. That suit was brought under what is now Section 6223, Or. L., which provides that the superintendent of banks "may, if necessary to pay the debts of such bank, enforce the individual liability of any of the stockholders," and it was held in effect that a complaint, in a suit brought under that section by the superintendent of banks to enforce the particular liability there involved, which failed to allege that the defendants were stockholders of the insolvent bank at the time the suit was brought, was demurrable. That section of the statute, however, is wholly inapplicable to the remedy sought to be enforced here, for in that case the court said: "This proceeding * * does not bear any likeness whatever to the case of a creditor seeking to recover his claim against a delinquent stockholder," which is the very purpose of this suit.

The liability of subscribers to the capital stock of a corporation engaged in the business of banking is a different liability than that of subscribers to the capital stock of a corporation not engaged in the business of banking. Section 3 of Article XI of the Constitution provides:

"The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock sub-

scribed and unpaid and no more, excepting that the stockholders of corporations or joint stock companies conducting the business of banking shall be individually liable equally and ratably and not one for another, for the benefit of the depositors of said bank, to the amount of their stock, at the par value thereof, in addition to the par value of such shares."

2. Section 6872, Or. L., applies to the instant case, and under its express provisions the liability, upon his unpaid subscription contract, of an original subscriber to the capital stock of a corporation not "conducting the business of banking," to the creditors of the corporation, upon the corporation becoming insolvent, is a continuing liability which continues to exist until paid, unless the subscriber has been deprived of his ownership of the stock by an involuntary sale: *Bush* v. *Cartwright*, 7 Or. 329. No distinction is to be found in any of the provisions of the Constitution or of the statute between one corporate creditor and another, in the right common to them all alike, to have the unpaid subscriptions to the capital stock of the insolvent corporation paid up to have it applied in satisfaction of their claims against the corporation. On the contrary, it is obviously the intent of the Constitution and of the statute to make the indebtedness of every stockholder, to the extent of his unpaid subscription, liable to be applied in satisfaction of the indebtedness due to any creditor of an insolvent corporation after such creditor has exhausted his remedies against the corporation and this is so without regard to when or in what manner the creditor's claim against the corporation, if a valid one, arose. If the amount of the subscription is unpaid to the corporation, it must be paid for the benefit of the creditors. The liability is not to

the creditors, but for the indebtedness, and when this indebtedness is discharged, the amount paid must be distributed to the general creditors of the corporation in payment of the corporate debts. Plaintiff is a judgment creditor of the corporation. He has exhausted his remedies against the corporation by recovering judgment against the corporation and causing execution to be issued thereon, which has been returned unsatisfied, and these facts are alleged in the complaint. It is also alleged and admitted that defendant was an original subscriber to the capital stock of the corporation. Therefore, unless defendant's subscription contract has been completely performed by payment for the stock by him subscribed for, whatever remains due and unpaid thereon must be paid for the benefit of plaintiff and other corporate creditors of the corporation.

We can find no support for defendant's contention in the other cases cited, and conclude that to entitle the plaintiff, a corporate creditor, to recover in this suit, it was not necessary for him to allege in his complaint that the defendant, who is alleged to be an original subscriber to the capital stock of the insolvent corporation, was a stockholder of the corporation at the time plaintiff's debt was created or at the time the suit was commenced.

3. In his answer to the complaint the defendant alleges that he subscribed for 225 shares of the capital stock of the Linnhaven Orchard Company; that the par value of the stock was $100 per share, and that he paid for the stock by the transfer of property to the corporation, which was accepted by the corporation as full payment for the stock subscribed for. It appears from the evidence, and it is not disputed,

that the Linnhaven Orchard Company was a domestic corporation; that it was incorporated in 1909 and was organized for the purpose of .acquiring title to real property, planting orchards thereon and selling the same to prospective purchasers; that it had an authorized capital stock of $300,000, which was divided into 3,000 shares of the par value of $100 per share, of which 2,000 shares were common stock and 1,000 shares preferred; that the defendant and seven others were promoters of the corporation and severally subscribed for all of the common stock; that defendant individually subscribed in writing for 225 shares of the common stock and the other seven promoters for the remainder; that before entering into the subscription contract these eight promoters had acquired for their joint benefit, and in the name of one of them, options, upon which nothing had been paid, for the purchase of about 3,000 acres of lands which was supposed to be valuable for orchard purposes; that according to the terms of the options, the prices to be paid for the optioned lands ranged from $10 to 40 per acre; that in acquiring these options and to provide for the expense thereof, each of the promoters had advanced $70, and of the amount thus advanced by them about $400 had been expended in procuring the options, the remainder having been repaid to them later; that the written subscription contract was signed by them on October 28, 1909; that on that day they signed a written consent for the holding of a stockholders' meeting; that a stockholders' meeting was held pursuant thereto, at which meeting the eight promoters, and no one else, were present; that at that meeting one of their number proposed to assign and transfer these options to the corporation as full payment by all of them for their

subscriptions to the capital stock of the corporation; that this offer was accepted by the promoters who were the sole stockholders of the corporation, and the corporation agreed to accept the transfer of the options as full payment for the stock; that as a part of the offer it was agreed by the promoters and the corporation that one half of the stock subscribed for, when issued, should be transferred back to the corporation to be held by its treasurer as treasury stock and to be sold and disposed of for the benefit of the corporation, the other half, that is to say, common stock of the par value of $100,000, to be the property of the eight subscribers; that pursuant thereto the options were transferred to the corporation, the stock was issued to the eight promoters, each of whom transferred back to the corporation one half of the stock he had subscribed for and kept the remaining half; that the transfer of these options to the corporation was the sole consideration paid by the promoters to the corporation for the 2,000 shares of the common stock of the corporation and that the transfer of defendant's interest in the options was the sole consideration paid by him for the 225 shares of the common stock he had subscribed for and for the one half thereof which he had since kept and retained; that the corporation subsequently became insolvent; that the plaintiff is a creditor of the corporation, has reduced his claim to judgment and execution has been issued thereon and returned unsatisfied. Defendant contends that the transfer of his interest in the said options and its acceptance by the corporation was a sufficient performance upon his part of his subscription contract to discharge all liability upon his part under his subscription contract as against creditors of the corporation. It appears that plaintiff is the only corporate creditor.

In dealing with a corporation the public has the right to assume, says Mr. Cook, "that the capital stock has been or will be fully paid up if it be necessary in order to meet corporate liabilities," and that "its actual capital in money or in money's worth, is equal to the capital stock which its purports to have unless it has been impaired by business losses." "This capital is the aggregate of the par value of all of the shares into which the capital is divided upon the incorporation," and is "the funds or resource with which the corporation is enabled to act and transact its business and upon the faith of which persons give credit to the corporation and become corporate creditors." 1 Cook, Corporations (4 ed.), § 199.

The object of this suit is to obtain the payment of plaintiff's judgment against the corporation, which has become insolvent, out of its credits or intangible property which, in this case, is its unpaid stock. While there is no privity of contract between a corporate creditor and a subscriber to the capital stock of the corporation, the indebtedness of the subscriber to the corporation is an asset to which the creditor is entitled in the settlement of his legal demands against a corporation: *Macbeth* v. *Banfield,* 45 Or. 553, 564 (78 Pac. 693, 106 Am. St. Rep. 670). The capital stock of a corporation, and especially its unpaid subscriptions, is a trust fund for the general creditors of the corporation: *Sawyer* v. *Hoag,* 17 Wall. 610, 620 (21 L. Ed. 731, see, also, Rose's U. S. Notes). To the extent that the defendant is a debtor to the corporation upon his subscription, his indebtedness is a trust fund for the payment of the debts which the corporation owes to its general creditors: *Brundage* v. *Monumental G. & S. M. Co.,* 12 Or. 322 (7 Pac. 314). The unpaid balance of subscriptions

to stock in a corporation is a fund in favor of its creditors and upon which they have a right to rely for the payment of their claims: *Lee* v. *Imbrie,* 13 Or. 510 (11 Pac. 270).

The statute provides that "any corporation formed under the laws of this state may purchase real or personal property, including the stock of any other corporation, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be fully paid stock and not liable to any assessment; and in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased shall be conclusive." Section 6872, Or. L.

In forming a corporation, under the statutes of this state, corporators are authorized by Section 6863, Or. L., to open and receive subscriptions to the capital stock of the corporation. When such subscriptions are received and accepted by the corporation, and the corporation is organized, they are binding both upon the corporation and the subscriber. The corporation becomes bound to accord to the subscriber the rights of a stockholder and the subscriber becomes bound to pay for his stock the amount he has promised to pay. That amount he may pay, if acceptable to the corporation, either in money or by the transfer of property or of stock in another corporation. When the subscriber pays for the stock subscribed for in money, in order to make the stock fully paid and nonassessable, he must pay an amount of money equal to the par value of the stock. If, agreeably to the corporation, the subscriber pays for the stock he has subscribed for, either by transferring property to the corporation or by transferring stock in another corporation, which, in the judgment of the

directors of the corporation, is equal in value to the par value of the stock given in exchange therefor, the statute makes the stock purchased, in the absence of actual fraud, fully paid and nonassessable.

4. The judgment of the directors of a corporation upon the value of property or stock to be taken and accepted by the corporation in exchange for its own stock in payment of a subscription contract, the exercise of which, when acted upon, is made conclusive by statute, refers to an honest attempt to determine the value of the property or stock by a board of directors representing the corporation alone and jealous of its rights and interests and anxious to secure for the corporation all that it is justly entitled to. Anything less than that is dishonest and fraudulent. The directors may be honestly mistaken. They may exercise a very poor judgment and make a very poor bargain, but this is wholly immaterial so long as they have no personal interests of their own to further and act fairly and honestly by the corporation they profess to represent.

The defendant relies upon the transfer of these options and the acceptance by the corporation of the transfers as a sufficient payment, under the statute, to discharge him from the obligations of his subscription contract. What effect these transfers, and the acceptance thereof, as payment for the stock, might have if questioned by the corporation itself or by a stockholder of the corporation, the corporation being solvent, is not necessary for decision. The sole question involved here is, what effect do they have upon a corporate creditor who is seeking to enforce the defendant's liability as a subscriber for his unpaid subscription as a trust fund for the payment of the debt which the corporation owes him, it being in-

solvent? It is obvious that if these options, upon which nothing had been paid and which merely conferred the right to purchase the optioned lands for a price equal to, if not in excess of, their market value, and which had been procured at but slight expense and under circumstances showing that options for the purchase of other lands in that vicinity equally as good and upon equally as good terms could have been readily procured, had been transferred to the corporation by third parties dealing with it at arm's length, in sole consideration of the issuance and delivery of them of the capital stock of the corporation of the par value of $150,000, the transaction would have been presumed to be fraudulent, which presumption could be overcome only, if at all, by the strongest kind of a showing of good faith upon the part of all of the parties engaged in the transaction. But when it also appears, as it does here, that the parties transferring these options to the corporation at such a gross overvaluation were the very parties who pretended to accept the transfer on behalf of the corporation and that they alone were in the control of the corporation and that the personal interest of each was subserved by the acceptance of the transfer in exchange for the stock, it conclusively establishes fraud. In the transaction involved here there was not such an exercise of judgment by the directors as to the value of the options as the statute intended should be exercised by a board of directors in the purchase of property or stock, and for that reason the pretended exercise of judgment by the directors is not conclusive upon any creditor of the corporation. And from this it follows that defendant's indebtedness to the corporation upon his subscription, which exceeds the amount of plaintiff's judgment,

is wholly unpaid and should be subjected to the payment of plaintiff's judgment so far as necessary to satisfy said judgment.

5. But two other points need to be noticed. The defendant seeks to raise the question of laches, but we find no proof to sustain such a contention. There is nothing in the record indicating that the plaintiff is chargeable with want of due diligence in not instituting these proceedings at an earlier date. Plaintiff was employed by the corporation from February 1, 1911, to June 1, 1913. He recovered judgment against the corporation for the balance due him for such services on October 22, 1915. Execution was at once issued upon the judgment and was returned unsatisfied. He commenced this suit on the twenty-seventh day of October, 1915. It is contended that because some of the other subscribers to the capital stock of the corporation had died or removed from the state before he commenced his action against the corporation, plaintiff was guilty of laches. How these facts, if true, establish negligence upon the part of the plaintiff in not sooner prosecuting his claim, or entitle the defendant to assert that the plaintiff should be precluded from enforcing his rights against defendant's indebtedness to the corporation for his unpaid subscription because of laches, does not appear from any fact established by the evidence or from any admission in the pleadings. The judgment against the corporation establishes the liability of the corporation to pay the debt due to the plaintiff.

6. In the absence of fraud a judgment against a corporation is conclusive in a suit brought by a judgment creditor to enforce his remedy against the stockholders: *Hawkins* v. *Investment Co.,* 38 Or. 544 (64 Pac. 320). Plaintiff's action against the corpora-

tion was seasonably brought, and immediately after he had recovered judgment and exhausted his remedies, without avail, against the corporation, he commenced this suit. There is therefore no room for the contention that the plaintiff has not proceeded with due diligence in prosecuting his claim.

7. It is also contended that there is a defect of parties defendant in that plaintiff failed to make other defaulting subscribers parties defendant in this suit. This contention is foreclosed by the former decisions of this court. "To the extent of the stock subscribed and unpaid, each stockholder is liable for the indebtedness of the corporation. It is a several, distinct and limited liability, as to which each stockholder stands alone, irrespective of the amount for which others are liable, except that if he pays more than his proportion of such debts, he may, as in other cases, have contribution from his coshareholders." *Hodges* v. *Silver Hill Mining Co.,* 9 Or. 200, 204.

"The liability of a subscriber for the capital stock of a company is several and not joint. By his subscription each becomes a several debtor to the company, as much so as if he had given his promissory note for the amount of his subscription. At law, certainly, his subscription may be enforced against him without joinder of other subscribers; and in equity his liability does not cease to be several. * * A judgment creditor who has exhausted his legal remedy, may pursue in a court of equity any equitable interest, trust or demand of his debtor in whosoever hands it may be. And if the party thus reached has a remedy over against other parties for contribution or indemnity, it will be no defense to the primary suit against him that they are not parties." *Brundage* v. *Mon. G. & S. M. Co., supra.*

The learned circuit judge before whom this cause was tried in the court below found as a fact the testimony offered before him as follows:

"The options secured by C. W. Tebault were secured with funds furnished by the promoters and for the benefit of the corporation to be formed, and at small expense, and at the time of their assignment to the corporation were of no practical value and were known by the promoters to have no value. The directors of the corporation did not exercise their judgment as to the value of such options, but simply by resolution carried out a scheme of the promoters of the corporation by which they were to receive 2,000 shares of the common stock of the corporation without paying anything of value therefor, and the corporation received nothing of value for such 2,000 shares of common stock and the issuance of such 2,000 shares of common stock fully paid up and nonassessable was a gross fraud upon the Linnhaven Orchard Company and its creditors."

With this we fully agree, and, finding no merit in any of defendant's contentions, the decree of the Circuit Court should be and is affirmed.        AFFIRMED.

McBRIDE, C. J., and BURNETT and BROWN, JJ., concur.