Argued December 22, 1927, affirmed November 27, 1928, rehearing denied January 8, 1929.

JENNIE B. THIELSEN ET AL. *v.* CARL LINDE ET AL.

(271 Pac. 983.)

For appellant there was a brief over the name of *Messrs. Clark, Skulason & Clark,* with an oral argument by *Mr. B. G. Skulason.*

For respondents there was a brief over the names of *Messrs. McNary, McNary, Keyes & Page,* with oral arguments by *Mr. J. G. Heltzel* and *Mr. E. M. Page.*

RAND, C. J.—The defendants, Linde and Armington, and plaintiffs are each subscribers to the capital stock of the Capitol Apartment Company, a corporation which was organized for the purpose of erecting an apartment house in the City of Salem. Plaintiffs are residents of Salem. Linde is an architect and resides in the City of Portland and Armington was the promoter of the corporate enterprise. The company was incorporated and organized and plans for the construction of the apartment house were prepared by Linde, but after an investigation of the cost the project was abandoned. A small amount of the stock was paid for and the corporation has no assets except the amounts thus paid. Linde subscribed for

forty shares of the capital stock of the corporation and was employed to prepare the plans and specifications of the apartment house, for which it was stipulated he should be paid $1,000 in cash and $4,000 in the paid-up stock of the company, and he has been paid for such services said sum of $1,000. He commenced action in the Circuit Court for Multnomah County to recover for said services and obtained a judgment against the corporation in the sum of $4,500.

Plaintiffs brought this suit to obtain a cancellation of their said stock subscriptions and to enjoin the defendant Linde from issuing an execution upon or otherwise enforcing his said judgment. The defendant Armington made no appearance or defense to the suit but Linde answered, setting up that plaintiffs, as stockholders of the corporation, are concluded by the judgment and are estopped to deny either the amount or the validity of the judgment, and prayed to have plaintiffs' unpaid subscriptions applied in satisfaction of the judgment. The subscriptions were all made prior to the incorporation of the company and, in making such subscriptions, a large number of the subscribers wrote the word ''conditional'' upon the subscription contract after their signatures, but none of said conditions was specified therein, and it is alleged in the complaint that, because of said subscriptions being conditional, one half of the capital stock of the corporation had not been subscribed at the time the corporation was organized and, for that reason, the corporation had no legal existence and the subscriptions are invalid and unenforceable.

Section 6863, Or. L., provides that one half of the capital stock of the corporation must be sub-

scribed before the corporation can be lawfully organized. An inspection of the subscription contract shows that if the number of shares subscribed by those who wrote the word "conditional" following their names are not to be counted, then one half of the stock of the corporation has never been subscribed, while if they are to be counted, then more than one half of the stock was subscribed. A subscription to the capital stock of a corporation which is a conditional subscription cannot be enforced against the subscriber unless the condition has been complied with by the corporation or has been waived by the subscriber, and anything which the corporation may lawfully do or contract to do may be made a condition of the subscription, but the condition to be effective must be specified in the agreement, because oral conditions are void, since parol testimony to show what the condition was is not admissible to contradict or vary the terms of the written subscription: *Myrtle Point Mill & Lumber Co.* v. *Clarke,* 102 Or. 533 (203 Pac. 588); 1 Cook on Corporations, § 81.

■ Notwithstanding that our statute provides that after a corporation has been incorporated the corporators are authorized to open books and receive subscriptions to the capital stock of the corporation, the fact that the stock was subscribed prior to the incorporation of the company does not render the subscription invalid, where it is shown, as it was here, that the offer of the subscriber to take the stock had not been revoked before its acceptance by the corporation and the company had been incorporated and organized within a reasonable time after the making of the subscription: *Balfour* v. *Baker City Gas Company,* 27 Or. 300 (41 Pac. 164).

■ Independently, however, of these considerations it is admitted that some of the plaintiffs have been elected as directors of the corporation and that, without objection upon their part, all of them attended the first meeting of the subscribers and aided the corporation in beginning business by participating in the election of a board of directors and in the appointment of a committee to carry out the purposes of the corporation. If the subscriptions had been conditional as contended for, these acts, if done with knowledge upon their part, would amount to a waiver by them of the objection that one half of the capital stock of the corporation had not been subscribed at the time the corporation was organized: *Fairview R. R. Co.* v. *Spillman,* 23 Or. 587 (32 Pac. 688), and authorities there cited.

It was also urged that plaintiffs were induced to subscribe for the stock by the false and fraudulent representations of Linde and Armington, that the site could be purchased for $19,000 and that the cost of the construction of the contemplated apartment house would not exceed the sum of $135,000. While there was proof tending to show that Armington made such representations and that they were false, there was an entire failure of proof to sustain the allegation that Linde made or was in any way responsible for the making of any such representations.

■■ This brings us to the principal contention in the case, namely, that defendant is entitled to have plaintiffs' unpaid subscriptions applied in satisfaction of his judgment. It is a well-settled rule of law that a judgment conclusively settles all matters of controversy involved in the suit so far as parties or their privies are concerned excepting where it may

be impeached for fraud or want of jurisdiction. When, therefore, a corporate creditor has obtained judgment against the corporation and execution has been returned unpaid and a creditor's bill has been brought to reach the equitable assets of the corporation, which in this case are unpaid subscriptions, in the absence of fraud and collusion, a judgment against the corporation, if the court had jurisdiction, is conclusive against the stockholders as to the validity and amount of the judgment, and the stockholders will not be permitted to set up in defense matters which the corporation might have set up or did set up to defeat the judgment.

■ In the law action the Circuit Court for Multnomah County had jurisdiction of the subject matter and of the parties, and it is not contended that there was any collusion between Linde and the corporation in obtaining the judgment, but it is alleged that to permit the judgment to be enforced as against plaintiffs' unpaid subscriptions would work a fraud upon the plaintiffs. Under the evidence in this case there can be no question but that Linde did agree with the stockholders and directors of the corporation that he would prepare the plans and specifications for $1,000 payable in money and $4,000 payable in stock. In fact he admits that by his testimony. Instead of complying with said agreement upon his part, he entered into a secret agreement with Armington by which he was to be paid three per cent of the total cost of the building and, in the law action, he testified that the building would cost $186,000, and he obtained a judgment upon that basis. Armington had no authority to enter into such written contract and, in the face of what Linde had agreed to do at

his conference with the stockholders and directors of the company, the contract was fraudulent. Hence, while it is clear that Linde may enforce his judgment against the corporation and that the stockholders are estopped to deny the validity and amount of the judgment, nevertheless the stockholders, when sued upon their unpaid subscriptions, are entitled to set up as a defense in their own behalf the fraudulent act of Linde and Armington in entering into a secret contract for a different compensation than that agreed upon between Linde and the stockholders and officers of the corporation. Because of such fraud they have a greater equity than Linde in their unpaid subscriptions.

Linde has received exactly what he agreed with plaintiffs he would take for his services. If he is permitted to enforce his judgment as against the plaintiffs in the suit he will be in the position of a stockholder who has not paid for his own subscription and this, we think, would be grossly inequitable and unfair. In his action he credited the corporation with the sum of $1,000, which had been paid him in cash, and with the further sum of $100, the par value of one share of stock which he admits he received. But he has not paid for the other $3,900 of stock for which he subscribed. Under such circumstances, a court of equity ought not to render its aid in the enforcement of the judgment as against the unpaid subscriptions of plaintiffs. In such case we think the rule is that a stockholder, who is also a creditor, may file a bill as a creditor to reach unpaid subscriptions but in order to do so he must pay his own subscription in full: 1 Cook on Corporations (4 ed.), § 205, and note 2.

 For these reasons we think the decree of the lower court should be affirmed, and it is so ordered.

AFFIRMED. REHEARING DENIED.

BROWN, J., concurs.

ROSSMAN, J., concurs in the result.

COSHOW, J., did not participate in this opinion.