Submitted on briefs December 22, 1931; affirmed January 5, 1932

# LAING *v.* HUTTON ET AL.

(6 P. (2d) 884)

*G. M. Roberts* and *Crews & Codding*, all of Medford, for appellants.

*Lewis, Lewis & Finnigan* and *L. A. Wells,* all of Portland, for respondent.

BEAN, C. J. It appears from the testimony that a resolution adopted by the stockholders and directors provided that this stock which they had subscribed for was to be issued to them as fully paid and non-assessable in consideration of such use of their names and services to be rendered in connection with the organization of the corporation. In effect it is claimed by defendants that their stock was paid in full in the manner stated. The strongest evidence we find in favor of defendants is the evidence that at a meeting at which the matter of the stock subscriptions and their value was discussed, as Mr. Ed. W. Miller, one of the defendants, testified, Mr. Cope stated "That he was taking care out of his subscription of some associates, which we understood to be, among others, Mr. Laing," and that Mr. Cope agreed "to divide up his stock with Mr. Laing. He said 'I will take care of Mr. Laing'."

But such statements did not bind William Laing, plaintiff. To the understanding of the subscribers to the stock of the corporation should be added the understanding and assent of Mr. Laing in order to approach a contract. The testimony does not show that plaintiff ever subscribed for any of the stock of the corporation or agreed to accept such stock, either directly or indirectly through Mr. Cope, as compensation for his services as architect or that plaintiff has been paid for his services except as credited on plaintiff's claim. The testimony, taken as a whole, shows that plaintiff Laing, from the state-

ments of the stockholders and directors, was led to believe that a fund was on hand to pay for his services and that he expected to be paid in money and in no other way. We cannot find from the evidence that plaintiff ever agreed not to look to the defendant for payment of his services in case the corporation did not pay him, as claimed by defendants. It appears that Mr. Cope was the leading promoter and that he had no money.

Mr. Flint testifies: "It was generally known that we had no money, and we were all going in equal, subscribing for $50,000 worth of promotion stock each. If we put the thing over we were all going to make some money." Mr. Gates says the other subscribers told him: "We don't want a dime from you, all we want is your services, your name as president of this company, and the influence you will get us to help us in your city in putting it before the people."

■ The subscription contract obligating the defendants was expressed in writing and cannot be changed by vague oral expressions occurring between the subscribers themselves, of which plaintiff is not shown to have had knowledge: § 9-212, Oregon Code 1930; *Thielsen v. Linde,* 127 Or. 639, 643 (271 P. 983) ; *Myrtle Point Mill, Etc. Co. v. Clarke,* 102 Or. 533, 542 (203 P. 588).

■ This case depends largely upon the facts. The return of an execution unsatisfied is evidence of insolvency: *Hodges & Wilson v. Silver Hill Mining Co.,* 9 Or. 200. The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of a corporation to the amount of the stock subscribed: § 3, Art. XI, Const. State of Oregon. The constitution did not declare a new right, but provided for the

preservation of an old one: *Patterson v. Lynde,* 106 U. S. 519 (1 S. Ct. 432, 27 L. Ed. 265). The liability of a stock subscriber is several and not joint: *Hatch v. Dana,* 101 U. S. 205, 210 (25 L. Ed. 885); *Hodges & Wilson v. Silver Hill Mining Co.,* supra; *Atwell v. Schmitt,* 111 Or. 96 (225 P. 325).

Defendants claim that they come within the provision of section 25-218, Oregon Code 1930, which provides in part as follows:

"that any corporation formed under the laws of this state may purchase real or personal property, including the stock of any other corporation, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be fully paid stock and not liable to any assessment; and in the absence of actual fraud in the transaction, the judgment of the directors as to the value of property purchased shall be conclusive;   *   *   *"

The statute further provides that in all statements and reports of the corporation the facts shall be stated. In the present case there was no real or personal property purchased by the directors of the corporation or any property of the stockholders upon which a value could be placed. There was nothing of substance transferred by the subscribers of the stock to the corporation in payment of their stock subscription.

■ Under our constitution and statutes, like that of many jurisdictions, stockholders are liable to or for the benefit of creditors of the corporation in case of its insolvency to the extent of the amount unpaid on their subscriptions or shares. In most jurisdictions and even in the absence of express constitutional or statutory provision, it is regarded as a fraud upon persons who may deal with a corporation and extend credit to it presumably on the faith of its capital stock being fully paid in, or secured to be paid in, to issue its stock on

payment of or agreement to pay less than its par value: 14 C. J. 952, § 1480. Our constitution and statutes are intended to make the indebtedness of every stockholder on unpaid subscriptions liable to be applied in satisfaction of the indebtedness due any creditor of an insolvent corporation after the remedies against it are exhausted, regardless of when or in what manner the claim arose: *Atwell v. Schmitt,* supra. In the latter case, a corporate creditor's suit to enforce payment of stock subscriptions which defendant claimed had been paid in full, it was held that evidence that promoters, of which defendant was one, had turned in options on realty for which they had expended about $400, as payment for $200,000 par value of stock, being all the common stock, did not show payment of his stock subscription in property, notwithstanding section 6872, Or. L. (§ 25-218, Oregon Code 1930), making the judgment of directors as to value of property so taken conclusive. It was further held that the directors' judgment on the value of the property or stock taken by the corporation in payment for its own stock, which section 6872, Or. L. (§ 25-218, Oregon Code 1930), makes conclusive in the absence of fraud, must result from an honest attempt of the directors, acting not for their individual interest but only for corporation, to fix the true valuation, anything less being dishonest and fraudulent.

The opinion in *Macbeth v. Banfield,* 45 Or. 553 (78 P. 693, 106 Am. St. Rep. 670), cited by defendants, contains a valuable discussion of the liabilities of subscribers to the capital stock of a corporation prior to the amendment of the statute by the General Laws of Oregon, 1903, p. 212. That case is not authority for the claim that defendants are not liable in the present case.

The good will, prestige and influence of the defendants, as subscribers of the stock of the corporation, apparently in order to assist in selling stock to the public, would not pay for their stock or fulfill the requirements of the constitution and statute. The record shows and the trial court found that none of the defendants, H. Hutton, George W. Flint, C. E. Gates, or Ed. W. Miller, have paid on account of their subscriptions any sum in excess of $2,500, and there is due and owing from each of said defendants to said Rogue River Studios, Inc., on account of their subscriptions, the full sum of $47,500, and decree that the plaintiff have judgment against said defendants and each of them in the sum of $2,254.50, together with costs and disbursements.

The decree of the circuit court is affirmed.